12977

PICKENS COUNTY v. HINTON *ET AL.*

(155 S. E., 881)

February, 1930.

*Messrs. Haynesworth & Haynesworth, B. F. Martin, W. C. Mann, G. G. Christopher* and *S. B. Craig,* for appellant,

*Messrs. Hughs & Hughs,* for respondent,

November 18, 1930.

PER CURIAM.

Upon consideration of the petition for a rehearing in this case, it is ordered that the opinion heretofore filed on September 22, 1930, be withdrawn and the following opinion be substituted in lieu thereof:

This is an appeal from an order of his Honor, Judge Townsend, refusing a motion by the defendants to amend their answer.

The action is against O. T. Hinton and the defendant, Fidelity & Deposit Company, surety upon his official bond as Treasurer of Pickens County, for an alleged loss of $91,438.35 to the county, by reason of his "careless, negligent and unlawful acts," in connection with the disbursement

of certain school funds, between July 1, 1921, and June 30, 1925, as County Treasurer.

The irregularities charged are:

(1) The disbursement of money borrowed, in a certain amount, for the general school fund, instead of placing it to the credit of the several school districts as provided by law.

(2) The disbursement of the general school fund in a certain amount, for purposes other than provided by law upon warrants issued by the County Board of Education, contrary to law.

(3) The disbursement of the general school fund, in a certain amount, as county board fund, upon warrants not issued by the County Board of Education as required by law,

(4) The disbursement of the general school fund, in a certain amount, upon warrants not approved by the Superintendent of Education of Pickens County as required by law.

(5) The disbursement of the school funds of the several school districts, upon warrants not signed by a majority of the board of trustees of the several districts, as required by law.

(6) The disbursement of the school funds, set apart as a sinking fund for placing the schools of the county upon a cash basis under the provisions of Section 2693, Volume 3, Code, in a certain amount, as part of county board fund, for alleged current bills filed against the County Board of Education.

The defendants proposed an amendment to their answer alleging:

"III. This defendant alleges that the said Oler T. Hinton, as Treasurer of Pickens County, did annually during his term of office, to wit, from July 1, 1921, to July, 1925, as required by law, have and make with the County Auditor of Pickens County a full and complete written settlement covering all the matters and things set forth in the complaint; that each settlement was made in compliance with

the provisions of law and attended by the County Supervisor, or Chairman of the County Board of Commissioners, County Superintendent of Education and Comptroller General (or the officer appointed by him) ; that such settlement sheets were duly presented by said Treasurer of Pickens County, and were vouched in accordance with the provisions of law, and duly approved in writing in compliance with Section 536 of Volume 3, Code of Laws of South Carolina for 1922, one copy being filed in the office of the County Auditor, and another copy mailed to the Comptroller General.

"IV. That at said annual settlements all of the items referred to in the complaint were duly presented, investigated and approved, and said annual settlements are final and conclusive and are binding upon the said County of Pickens and all other parties interested, and the matters and things set up in the complaint cannot be re-agitated.

"V. That upon expiration of his term of office, the said Oler T. Hinton, as Treasurer of Pickens County, in July, 1925, did make and have with the County Supervisor, or Chairman of the County Board of Commissioners, County Superintendent of Education and Comptroller General (or the officer appointed by him) a complete and final settlement covering all his transactions as County Treasurer; all books, vouchers, receipts and other papers being presented and approved, and, together with the balance shown to be on hand, turned over to his successor in office, as required by Section 756 of Volume 3, Civil Code of South Carolina, 1922; that said settlement is final and conclusive and binding upon said County of Pickens and all other parties interested, has been acquiesced in for nearly five years and cannot now be questioned."

The motion for the amendment was refused by his Honor, Judge Townsend, and from his order the defendants have appealed.

If the proposed amendment is of any conclusive or pro-

bative value in determining the liability of the treasurer on account of the first irregularity charged, it should have been allowed. We think that it had at least some probative value, in reference thereto, and for that reason we need only to discuss that irregularity, thus expressed in the complaint: "He, the said Oler T. Hinton, as Treasurer of the County aforesaid, during said period received eighty-seven thousand, eight hundred and seventy and No/100 Dollars ($87,870.00) of money borrowed for the general school fund of said county, and carelessly and negligently disbursed the same as county board fund instead of placing it to the credit of the several school districts of said county as provided by law."

Under Section 2692, Volume 3, Code, the County Treasurer and the County Supervisor are authorized and required, upon the application of the County Board of Education, to borrow from time to time, during any fiscal year, such sums of money as may be necessary to pay school claims, not exceeding 75 per cent. of the estimated income, and to pledge the taxes to be collected for that purpose to the payment of the loan, to be paid out by the County Treasurer as school funds.

It may be that, as indicated in the case of *Shelor v. Pace*, 151 S. C., 99, 148 S. E., 726, it immediately would become the duty of the County Superintendent of Education to apportion the loan to the several school districts and notify the treasurer of the same, who should enter upon his books a credit therefor in favor of each school district, in analogy to the course directed to be taken by Section 2569 in reference to taxes collected by the treasurer and reported to the County Superintendent of Education, though we are not to be understood as declaring this to be an absolute rule; the failure of the treasurer to conform to this possible rule *per se* would not necessarily cause damage to any particular school district.

If it should happen that any school district, in the disbursement of the proceeds of such loan, should actually receive more than its proportion, there would be no difficulty in adjusting the accounts between the several school districts, in connection with the general school fund outside of the proceeds of the loan, particularly as the amount of the loan is limited to 75 per cent. of the estimated income. The same adjustment could readily be made if a school district should receive less.

It is further charged that the treasurer disbursed the loan as county board fund, the fund created by the one-mill levy under Sections 2593, 2594 of the Civil Code 1922, we assume, upon the warrants of the County Board of Education.

No charge of appropriation of funds is made against the treasurer; no defalcation or embezzlement by which the county has lost a dollar; there is no claim that any school district has failed to receive credit for its just proportion of the school taxes collected or its share of the proceeds of the loans. If it should appear that any school district which did not receive its reasonable proportion of the proceeds of the loans has nevertheless received from other sources all that it was entitled to, who has been damaged? The statements and settlements for the various years are essential to determine whether any loss has been sustained by anyone upon this account. It is significant that the complaint is silent upon the matter of damage, probably for the reason that none could be shown, a matter that would be absolutely cleared up by the statements and settlements.

Of course these statements and settlements are not conclusive and are open to the correction of errors, negligently or fraudulently caused, but, where no improper conduct is charged against an officer, he is entitled to all of the information that could possibly throw light upon the issue of irregularity or negligence or proof of damage.

Without adverting to the other charges against the treasurer, the foregoing is sufficient to demonstrate the error

in the order refusing the amendment, so far as it affects the item discussed. If erroneous as to it, there is no need to discuss the others.

If the order should be affirmed, the door would be closed to the admission of the proposed evidence; this would work a great injustice to an officer against whom nothing more than a possible irregularity has been charged.

The petition for a rehearing is refused, and the judgment of this Court is that the order appealed from be reversed. The clerk will allow the usual time before transmitting the remittitur to the circuit Court.

MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE GRAYDON.

We think that the petition for rehearing should be granted.